**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2592-18T4

PATRICIA MELE,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

JOHN MELE,

       Defendant-Appellant/
       Cross-Respondent.

_____

       Argued February 12, 2020 — Decided March 5, 2020

       Before Judges Koblitz, Whipple, and Mawla.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-19256-90.

       Robert T. Corcoran argued the cause for appellant (Robert T. Corcoran, PC, attorneys; Robert T. Corcoran, of counsel and on the briefs; Sara J. Corcoran, on the briefs).

       Patrick T. Collins argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Patrick T. Collins, on the brief).

PER CURIAM

Defendant John Mele appeals from a December 27, 2018 order entered following a post-judgment plenary hearing denying his request to terminate alimony. Plaintiff Patricia Mele cross-appeals from the denial of her request for counsel fees. We affirm the alimony determination and reverse and remand the counsel fee issue.

The parties were divorced in 1993, following a twenty-year marriage. Five children were born of the marriage. At the time of the divorce, the parties entered into an oral settlement agreement, which required defendant to pay child support and housing assistance to plaintiff until the children became emancipated. The parties agreed plaintiff would be able to seek alimony when the last child was emancipated. Plaintiff also received equitable distribution worth $500,000.

The youngest child was emancipated in 2012, and plaintiff filed a motion seeking alimony. Following a three-day plenary hearing, the trial judge entered a November 1, 2013 order awarding plaintiff alimony. In his written findings, the judge concluded plaintiff remained at home to raise the children and to be a homemaker during the marriage and defendant worked long hours developing his catering business. The judge found plaintiff's needs totaled $112,264 per

2

year. The judge imputed an income of $20,000 per year to plaintiff, then sixty-three years of age, based upon the testimony of defendant's employability expert. The judge noted defendant, who was then sixty-six years of age, "did not allege an inability to pay [alimony] and elected not to have [the c]ourt consider his present income." The judge found both parties "appear[ed] to be in good health." He awarded plaintiff permanent alimony of $7688.70 per month, effective January 1, 2013.

In October 2017, defendant filed a motion to terminate alimony on grounds he retired for medical reasons. Plaintiff cross-moved for counsel fees. A different trial judge conducted a plenary hearing at which plaintiff and defendant, then sixty-seven and seventy-one, testified.

Analyzing the N.J.S.A. 2A:34-23(j)(3) factors and the testimony, the judge concluded both parties enjoyed good health. The judge found defendant's reasons for retiring were not due to health concerns.

The judge found defendant did not prove he was retired because he remained the sole proprietor of his catering business and "[t]here is no generally accepted age for retirement for business owners as they are able to choose when to retire." The judge determined defendant had no mandatory retirement age and "continues to reap the benefits from any of the business profits." She noted

that, although defendant claimed his wife and children operated the business, he continued to visit the business "two to three times per week to meet with the kitchen staff to discuss new recipes and food trends[, and] . . . continues to oversee . . . operations and . . . occasionally picks up and deposits checks for the bank. [Defendant] also continues to contact appropriate personnel if the building is in need of any repairs." The judge concluded defendant "was not forthcoming about his continued involvement in the business. He clearly remains very involved in the operations . . . and . . . he is clearly not fully retired from this business."

The judge found the parties had no reasonable expectation defendant would retire at the time of the divorce because plaintiff testified they did not discuss the issue. Furthermore, the parties expressly contracted for alimony to begin following the last child's emancipation.

The trial judge concluded defendant had the ability to pay because "he is still the president and sole owner of the [business]. He can collect funds and retain benefits from the business as he pleases." The judge noted defendant was able to purchase a property adjacent to the business for $950,000 and opened a bakery on the site. The judge stated:

> In looking at his tax returns it appears that [defendant] continues to receive financial benefits

A-2592-18T4

> identical to those he received before his retirement except that those benefits are now directed towards his current wife. The [c]ourt notes that he used to earn . . . [an] income of $150,000. And, now his current wife earns $160,000.

Conversely, the judge found plaintiff's only source of income was alimony. Although plaintiff's personal residence was mortgage-free, the judge noted she incurred a mortgage to buy out her siblings' share of a two-family residence inherited from her father, which she intended to renovate to earn rental income. The judge declined to impute a rental income to plaintiff from the property because she was still renovating it. The judge also declined to impute social security earnings to plaintiff because she intended to claim those benefits at age seventy, when the payment would be greater. Therefore, the judge concluded plaintiff still needed alimony.

The judge concluded plaintiff's ability to save for retirement was limited by the fact she did not contemplate defendant would "retire[] within five years of receipt of her initial alimony payment." Although the judge found plaintiff could have saved more money, her "need for alimony substantially outweighs any disadvantage to [defendant]" and denied the motion.

Addressing the Rule 5:3-5(c) factors, the judge found as follows: each party could pay his or her own expenses and counsel fees; defendant's motion

was not made in bad faith; counsel fees had not been previously awarded; defendant did not obtain a favorable result; and plaintiff's fees were incurred to enforce defendant's alimony obligation. The judge noted she could not determine the extent of the fees incurred, or the amount of fees each party previously were awarded or paid, because neither party filed an affidavit of services. The judge denied plaintiff's request for counsel fees.

## I.

> [F]indings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We defer to the credibility determinations made by the trial court because the trial judge "hears the case, sees and observes the witnesses, and hears them testify," affording it "a better perspective than a reviewing court in evaluating the veracity of a witness." Id. at 412 (citing Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

> If the trial court's conclusions are supported by the evidence, we are inclined to accept them. Ibid. We do "not disturb the 'factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" should we interfere to "ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J.

6

Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

[Gnall v. Gnall, 222 N.J. 414, 428 (2015).]

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). However, "[t]his court does not accord the same deference to a trial judge's legal determinations[,]" instead "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Defendant argues the trial judge erroneously found: (1) there was no good faith retirement; (2) alimony commenced in 2013; (3) defendant benefits from the business when he actually passed it on to his wife and children; and (4) defendant had no medical reason to retire despite receiving a third pacemaker after the entry of the 2013 order. As to plaintiff, defendant argues the trial judge: (1) did not properly weigh her ability to save as the statute requires, namely, the judge did not consider her actual savings and that she would have more money to support herself if she did not purchase her father's home; (2) did not impute a rental income to plaintiff based on her purchase of a two-family home; (3) mistakenly applied the law because she only considered plaintiff's actual

earnings from inheritance; (4) failed to impute social security earnings to plaintiff due to her failure to apply for social security before the age of seventy; and (5) incorrectly concluded plaintiff had not worked outside of the home during the marriage.

On her cross-appeal, plaintiff argues the judge erred by denying counsel fees without affording her the opportunity to submit an affidavit of services. We address these arguments in turn.

II.

At the outset, we reject defendant's assertion that he was paying alimony prior to 2013. The parties' settlement agreement required defendant to pay plaintiff child support and housing assistance. There is no evidence the sums paid were considered alimony, let alone treated as such for tax purposes by either party. Therefore, defendant's argument that his alimony obligation should cease because he has paid it since 1993 lacks sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We also reject defendant's challenges to the judge's findings under N.J.S.A. 2A:34-23(j)(3). The statute states:

> When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as

defined in this section shall be deemed a good faith retirement age. Upon application by the obligor to modify or terminate alimony, both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current Case Information Statements [CIS] or other relevant documents as required by the Rules of Court, as well as the [CISs] or other documents from the date of entry of the original alimony award and from the date of any subsequent modification. In making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate:

(a) The age and health of the parties at the time of the application;

(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the

9

marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

In addition to the statute, our caselaw requires trial judges to consider every statutory factor in an alimony determination. See Crews v. Crews, 164 N.J. 11, 26 (2000) (stating: "An alimony award that lacks consideration of the factors set forth in [the statute] is inadequate.").

The trial judge addressed each factor in a detailed oral decision. Regarding defendant's health, the judge noted he had pacemakers implanted in 1999, 2004, and 2015. She stated: "After getting his third [pacemaker] defendant testified that he thought that it was time to . . . '[t]ake it easy' . . . [a]nd . . . '[t]ime to start enjoying himself,' . . . by retiring. When asked to describe his current state of health defendant indicated that he . . . '[f]eels great' . . . [a]nd, that his health is . . . '[g]ood.'" In addition, the judge reviewed defendant's

medical records and concluded that his "health has not substantially changed since the inception of his alimony obligation [in 2013]." The record supports the judge's conclusion that defendant's health was neither a basis for a good faith retirement, nor demonstrated a change in circumstances requiring a termination of alimony.

There was also no evidence defendant actually retired and ceased employment. He proffered no testimony—expert or otherwise—explaining whether there was an accepted retirement age for sole proprietors of catering businesses. Moreover, the substantial, credible evidence in the record showed that regardless of the alleged transition of the business to his wife and son, defendant continued to manage and operate it.

Indeed, the judge found defendant's testimony that he was no longer involved in the business lacked credibility. She stated:

> It is incomprehensible that someone who once worked every day of the week to build such a successful business now only occasionally asks about the business. This [c]ourt finds that [defendant's] motives for retirement were not solely due to his health. In his mind, plaintiff should not receive any alimony despite a [twenty-]year marriage during which time she stayed at home to care for the five children.

A-2592-18T4

Moreover, defendant's credibility suffered when his testimony revealed his motive was to avoid paying alimony. The trial judge recounted the following:

> Notably, when asked if he could possibly take a step to ensure that the money owed to [plaintiff] would be readily available to give to her he responded with "Why is she entitled to it[?] . . . I'm not married to her." These responses appear to suggest his unwillingness and resentment in having to pay alimony. [Defendant] testified he didn't want to pay the alimony.

The record amply supports the trial judge's findings. Substantial credible evidence supports the judge's conclusion that defendant did not retire in good faith.

We also reject defendant's arguments related to the trial judge's assessment of the statutory factors regarding plaintiff. Plaintiff's testimony that she was not employed outside of the marital residence since 1973 was unrebutted by credible evidence. Notwithstanding, the trial judge continued to use the $20,000 imputed to plaintiff when the court established alimony in 2013.

Moreover, defendant's arguments the judge did not consider plaintiff's potential savings and earnings are misplaced. Regarding plaintiff's efforts at savings, the judge noted the following:

> The home where [plaintiff] lives is currently mortgage free. Since [the] initial alimony award [plaintiff]

12

purchased an investment property . . . and obtained a mortgage. She currently owes [$]251,613 according to her CIS on this mortgage.

. . . [Plaintiff] bought out her siblings' interest in the home . . . for investment purposes and to generate income . . . .

She is at the construction site most days. Neither party produced any evidence for this [c]ourt's consideration regarding the rental income other than her testimony that she can rent one [apartment] for about [$1800] and the other . . . [for] a little less. . . . According to the testimony however, she's not generating income from that property yet.

Regarding plaintiff's earnings, the judge accepted her testimony that she did not apply for social security benefits because she was "[w]aiting for the age where she could receive the maximum benefits," which the judge noted was seventy based on materials plaintiff presented from the social security website. The judge further noted that "[t]he defense failed to provide for this [c]ourt's consideration concrete evidence regarding the amount that [plaintiff] could be receiving in [s]ocial [s]ecurity benefits." The judge concluded that "although [plaintiff] had the ability to make better financial decisions in order to amass more savings, it is but one fact that the [c]ourt must consider in making the determination as to whether alimony should be terminated."

A-2592-18T4

In Miller v. Miller, the Supreme Court held investment income could be imputed to a supporting spouse for alimony purposes because he was "an experienced investor who gained great knowledge of financial matters through his employment." 160 N.J. 408, 425-26 (1999). In Overbay v. Overbay, we held the rate of income imputed in Miller could not be applied to the payee who had a different investment strategy and experience because "'no two cases are exactly alike,' . . . , neither bright-line tests nor hard and fast rules should be imposed when imputing a reasonable rate of return any more than when determining an appropriate award of alimony." 376 N.J. Super. 99, 110-11 (App. Div. 2005) (citation omitted).

We stated:

> The lesson to be learned from Miller is that when a spouse with underearning investments has the ability to generate additional earnings—without risk of loss or depletion of principal—but fails to do so, it is fair for a court to impute a more reasonable rate of return to the underearning assets, comparable to a prudent use of investment capital. In Miller, the Court took note of the difference between legitimate investment strategies, specifically, between investing "designed to produce [future] income through appreciation in stock values" and investing for present income. 160 N.J. at 421. In imputing additional income to Mr. Miller, id. at 423-24, the Court recognized that it would be unfair to allow one spouse to maximize future income through anticipated asset appreciation for his or her own benefit, while limiting present income that would enter

into the alimony calculation for the benefit of the other spouse. That distinction between a "growth" strategy and an "income" strategy applies equally to a supporting and a supported spouse in the context of imputing income to either spouse for purposes of calculating alimony. Mrs. Overbay's investment strategy here bears no similarity to Mr. Miller's. There is no suggestion that she has reduced her current income in the pursuit of future asset appreciation. Thus, the trial judge initially erred when he failed to explain why it was appropriate to impute additional earnings to defendant's inheritance, and he subsequently erred when he used an unrealistic rate of return to impute additional investment income to defendant.

[Id. at 111-12.]

We discern no error in the trial judge's assessment of plaintiff's efforts to save and her earning capacity. As the judge noted, plaintiff "did not contemplate [defendant] retiring within five years of receipt of her initial alimony payment." Therefore, it was neither feasible nor likely plaintiff would be able to replace the income derived from alimony with her savings, the portion of the inherited residence, and by taking an early social security payout. Plaintiff's cautious approach to handling her inheritance and social security income demonstrated a practical, realistic approach to future income generation to either supplement or replace alimony when it terminated.

15

As the trial judge stated, plaintiff's "need for alimony substantially outweighs any disadvantages to [defendant]." Only one factor out of the eight the judge considered favored defendant, namely, N.J.S.A. 2A:34-23(j)(3)(h). The judge's decision to maintain alimony was not an abuse of discretion.

## III.

Finally, we are constrained to reverse and remand for reconsideration plaintiff's counsel fees request. The judge analyzed the Rule 5:3-5(c) factors and determined two favored an award of fees, three did not, and one was not applicable. The judge also determined that she could not assess three factors, namely, the extent of the fees the parties incurred, were previously awarded, and previously paid because neither filed an affidavit of services. However, the record reveals plaintiff did file the required affidavit with her initial motion pursuant to Rule 5:3-5(c). Therefore, the judge should consider the initial affidavit and permit plaintiff to supplement it by providing the judge with a description and accounting of counsel's services since the initial filing through the end of the trial to enable the judge to consider all of the Rule 5:3-5(c) factors. We express no view as to whether attorney fees should be granted.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2592-18T4